## CHARLES LOWELL *vs.* CLARK DANIELS.

A married woman, who executes a warranty deed of her real estate, bearing date previously to her marriage, by the name which she then bore, with the fraudulent purpose of imposing upon some person to be affected by it, and without disclosing the fact of her marriage, does not thereby estop herself and her heirs to set up her title in the land as against her grantee, or against a purchaser from him without notice.

WRIT OF ENTRY to recover two lots of land in Cambridge. Plea, nul disseizin.

At the trial in the court of common pleas, before *Hoar*, J. the demandant, to sustain his action, relied upon two mortgage deeds of the premises, with the usual covenants of warranty, made to him by John B. Hooton, one dated and acknowledged August 4th 1836, and the other July 21st 1837, and each recorded the next day after its date, and each containing, at the close of the description of the premises, the following reference : " Being the same conveyed to me by Rachel Smith by her deed dated August 1st 1834." The demandant proved the execution of these mortgages, and the loan and non-payment of the moneys which they were given to secure, and here rested his case.

The tenant then proved title in the premises in Rachel Smith previous to 1834; that she was lawfully married to Michael Heffrein in February 1835, and died in June 1839, leaving her husband living, but no children by this marriage ; and that Heffrein, with his wife, was in possession of the premises for a

14 *

year or more after their marriage. And the tenant gave in
evidence a deed to himself from Heffrein, of his interest in the
premises, dated January 26th 1839, and recorded January 30th
1839. It also appeared that the tenant's wife was daughter of
said Rachel by a former marriage, and had children by the
tenant. The tenant then rested his case.

The demandant then proposed to read an office copy of the
deed referred to in the mortgages, purporting to be from Rachel
Smith to John B. Hooton, bearing date of August 1st 1834,
acknowledged and recorded December 31st 1835. The tenant
produced and proffered to the demandant the original deed,
and objected to the admission of the copy in evidence, on the
ground that, not being an ancient deed, and coming in the
direct line of the demandant's title, and referred to in his mort-
gage deeds, and no evidence being offered of any attempt to
procure the original, which was now tendered to the demandant,
it was not the proper instrument of evidence to prove title in
John B. Hooton, the mortgagor, but that the original should be
put in and its execution duly proved. But the objection was
overruled.

The demandant then read the copy of the deed, which is
a warranty deed, with the usual covenants, signed " Rachel
Smith," and attested by two witnesses. The tenant objected
to the deed, that when thus proved by the office copy, it could
not be taken to have been delivered at a date earlier than
the date of the record, which was subsequent to Rachel
Smith's marriage to Heffrein, and so the copy could not be
evidence of the execution and delivery of the deed at a time
when she had capacity to convey by her sole deed; and that
the title thereby dated from the time of its record, and not
earlier. But the objection was overruled.

The demandant again rested here ; and thereupon the tenant
put in the original deed from Rachel Smith to John B. Hooton,
and proved its execution at or about the time of the acknowl-
edgment, namely, on the 31st of December 1835.

There was some evidence tending to show, as the demandant
contended, that said Rachel made this deed with the intention

of preventing her husband Heffrein from holding any title to the premises; and that it was antedated, and signed and executed in the name which she bore before her marriage, for that purpose; and that it was made without his knowledge.

An agent and son of the demandant, who had charge of the matter, testified that when Hooton applied for the loan on the first mortgage, he caused the record title to be examined, and also asked Hooton for the original deeds of the property, who referred him to said Rachel; that he called upon her, and told her that he wished to examine Hooton's title; that she then produced the deeds under which she acquired title; that she knew that the application was for the purpose of taking a mortgage, or doing something about a mortgage; but that nothing was said directly about Hooton's title to the land, except as connected with her title, and those deeds were to assist in investigating his title; and that she communicated no defect in the title to the witness, who at that time had not heard of her marriage to Heffrein.

Upon these facts, the tenant asked the judge to instruct the jury, that the deed of Rachel Smith to John B. Hooton, being made by a married woman, without the concurrent action of her husband, or his joining in the same in any way, but made by her in the name which she bore while unmarried, and acknowledged by the same name, and delivered while she continued under coverture, was altogether void, and in no way effective to give the grantee named therein a valid title, or any title, and that consequently the mortgages made by him created no lien upon the estate, and the demandant could not recover.

But the judge declined to give the instruction requested by the tenant, and instructed the jury " that if Mrs. Heffrein made and executed the deed after her marriage; and it was antedated and signed by her, using the name which she bore before her marriage to Heffrein, with a fraudulent purpose, in which she concurred and participated, of giving the deed an effect which it would not have had in her true name and under the true date, knowing that it would deceive and impose upon some person to be affected by it; she and her heirs would be estopped

to deny that the date of the deed which she thus executed and caused to be recorded was the true date; and against them the deed would be taken to have the same effect as if it had been executed and delivered at the time of its date, when she was unmarried and had capacity to make it; and this would be so whether the fraudulent purpose was to deprive her husband of his interest in the estate, or any other; or perhaps a better way of stating it would be, that in the case supposed the respondent would be estopped from setting up any title in Mrs. Heffrein at the time Hooton conveyed to the demandant. But mere passive conduct on her part, in suffering the demandant without notice to take a defective conveyance, or signing the deed by a wrong name with a wrong date, without a fraudulent purpose on her part, would not estop her heirs to deny the validity of the deed."

The jury returned a verdict for the demandant, and the tenant alleged exceptions. The arguments upon the points not decided are omitted.

*J. Parker & H. M. Parker*, for the tenant. The deed from Mrs. Heffrein to Hooton, being shown to have been executed during her coverture and without the concurrence of her husband, is void; and nothing passed by the terms of the grant, nor by force of the warranty. *Fowler* v. *Shearer*, 7 Mass. 20–22. *Concord Bank* v. *Bellis*, 10 Cush. 276. *Wight* v. *Shaw*, 5 Cush. 65–67. *Comstock* v. *Smith*, 13 Pick. 119. *Page* v. *Page*, 6 Cush. 196. *Good* v. *Zercher*, 12 Ohio, 364. *Applegate* v. *Gracy*, 9 Dana, 217. Baron & Feme, 8. The deed to Hooton being utterly void, he could convey nothing to the demandant. A party who holds the deed of a married woman has not such an appearance of title that he can convey a title, even to a *bona fide* purchaser; but the purchaser is bound to inquire at his peril, although the deed to his vendor does not appear on its face to be the deed of a married woman.

The covenant of warranty, being the covenant of a married woman, and therefore utterly void, cannot be valid as a ground of action, nor effectual by way of estoppel. *Comstock* v. *Smith*, 13 Pick. 119, 120. *Raymond* v. *Holden*, 2 Cush. 270, 271.

*Brereton* v. *Evans*, Cro. Eliz. 701. Com. Dig. Estoppel, C. Co. Lit. 352, 366. 1 Greenl. Ev. § 24. *Wight* v. *Shaw*, 5 Cush. 66. *Dominick* v. *Michael*, 4 Sandf. 423. *Dougal* v. *Fryer*, 3 Missouri, 43. That which is void cannot be confirmed, nor any additional strength given to it, by fraud. *Robeson* v. *French*, 12 Met. 24. It is immaterial whether the demandant had actual knowledge of the marriage or not. His want of knowledge cannot make the deed of a married woman valid, or work an estoppel. The purpose and intent with which Mrs. Heffrein executed the deed are immaterial. And her subsequent acquiescence was of no avail. *Youse* v. *Norcoms*, 12 Missouri, 564.

If she could have been estopped, on the ground of fraud, to claim against her deed, it must be as a punishment for the fraud, and such estoppel must be personal, and cannot affect her heirs.

*A. H. Nelson & J. P. Converse*, for the demandant. A person, who has induced another to believe that a certain state of facts exists, and to act upon such belief, is estopped to set up any state of facts different from that represented; especially when, as here, the representations were fraudulent. And the estoppel binds privies in estate. This doctrine holds in cases of real, as well as of personal estate. *Dezell* v. *Odell*, 3 Hill, 215. *Welland Canal* v. *Hathaway*, 8 Wend. 483. *Fay* v. *Valentine*, 12 Pick. 40. 2 Sugd. Vend. (7th Amer. ed.) 515 *& note*. *Pickard* v. *Sears*, 6 Ad. & El. 474. *Heane* v. *Rogers*, 9 B. & C. 586. *Dewey* v. *Field*, 4 Met. 381. *Platt* v. *Squire*, 12 Met. 494. *Hatch* v. *Kimball*, 16 Maine, 146. It holds in law, as in equity. *Saunders* v. *Robinson*, 7 Met. 310. *Heard* v. *Hall*, 16 Pick. 460. *Runlet* v. *Otis*, 2 N. H. 167. *Hatch* v. *Kimball*, 16 Maine, 146. And coverture or infancy is no excuse for fraud. *Foster* v. *Savage*, 9 Mod. 35. 1 Story on Eq. §§ 385–392. Bac. Ab. Fraud, B. *Hunsden* v. *Cheyney*, 2 Vern. 150. *Evans* v. *Bicknell*, 6 Ves. 181, 194 *& note*. *Cory* v. *Gertcken*, 2 Madd. 40. To give effect to such estoppel in this case is not to pass a title without deed; it is only, for reasons of good faith and public policy, to refuse to allow a deed, which on its face appears to be good, to be shown to be invalid

And this court, upon dismissing the suit in equity, brought by the demandant against the tenant and other heirs at law of Rachel Smith, to foreclose one of the mortgages made by Hooton, said : " If the plaintiff has been deceived as to the state of the title, and took his mortgage under fraudulent repre sentations, or designed concealment of her title, on the part of Smith, and by such acts as would amount to an estoppel *in pais*, the plaintiff may avail himself of such grounds in a court of law." 2 Cush. 236.

*J. Parker*, in reply. In *Foster* v. *Savage*, 9 Mod. 35, and *Hunsden* v. *Cheyney*, 2 Vern. 150, which are the only cases, cited by the demandant, in which married women have been held estopped by their own frauds, and upon which all the later authorities rely, the husband was a party to the original fraud.

The remark of the court in *Lowell* v. *Daniels*, 2 Cush. 236, is based on the hypothesis, that " the facts are truly alleged by the plaintiff." And the plaintiff in his bill alleged, that the deed was made with the knowledge and consent of her heirs at law, the defendants, who all had knowledge of the purposes and circumstances connected with the making of the same ; thus seeking to estop the heirs by their own acts and participation ; of which there is no evidence in this case.

Thomas, J.    The decision of one of the questions raised by the bill of exceptions seems to be conclusive of the rights of the parties, and to this we have confined our attention. That question is, whether the tenant, whose wife is heir at law of Mrs. Heffrein, is estopped to deny the validity of the deed under which, through the deeds of Hooton, the demandant claims.

The deed of Mrs. Heffrein to Hooton, *proprio vigore*, conveyed no estate. The separate deed of a married woman, without the assent of the husband, it was absolutely void. *Fowler* v. *Shearer*, 7 Mass. 21. *Concord Bank* v. *Bellis*, 10 Cush. 276. It has no force, because the grantor had no capacity to make it. The instrument has the form and semblance of a deed, and nothing more. Indeed, the demandant does not contend that this deed has of itself any validity ; but that, under the facts of

the case, the tenant is estopped to deny its validity ; or, in other words, the title of the demandant is the result of estoppel, and not of grant ; or to speak perhaps more precisely, of an estoppel that works a grant.

The demandant, to show title in himself, offers the two deeds of mortgage from John B. Hooton. Deeds of warranty, they make *prima facie* evidence of the seizin of the premises in the demandant. The tenant then shows that the premises belonged to Mrs. Smith; that she died intestate; that his wife was her daughter and heir in law. The tenant thus makes an elder title. The demandant must now show that the estate that was in Mrs. Smith passed out of her and into his grantor. He undertakes to show it passed by deed. To do this, he must prove not merely the execution of the instrument, but its execution by one having the requisite legal capacity to make a deed. He offers for this purpose a copy from the registry, of a deed, purporting to be from Mrs. Smith to his grantor, bearing date August 1st 1834. Assume that this is sufficient *prima facie* evidence of the execution and delivery of the deed at the time of its date ; it is only *prima facie*, and when the evidence is closed, the burden is still on the demandant to show its execution and delivery, by one competent in law for that purpose. When the evidence is in, it appears that this deed was made, delivered, acknowledged and recorded, when the grantor was a married woman, and incapable of making it; that is, that it was absolutely void. By force of the deed, then, the demandant wholly fails to show that the land had passed from the tenant's wife's mother to his grantor.

Then the demandant says that the deed, upon its face, bears date of the first of August 1834, when the grantor was sole and capable of making a deed ; that it was signed with the name she bore before her marriage with Heffrein; and was so signed and dated with a fraudulent purpose, on her part, of giving the deed an effect, which it would not have had in her true name, and under the true date ; knowing it would deceive and impose upon some person to be affected by it; and when the agent of the demandant called upon Mrs. Heffrein, stating to her that he

wished to examine Hooton's title, and informing her that the application was made with a view to a mortgage, she produced the deeds of the land to herself, but did not communicate to the agent any defect in Hooton's title ; and that therefore, whether the fraudulent purpose was to deprive her husband of his interest in the estate, or any other, the grantor and her heirs are estopped to deny that the date of the deed, which she executed and caused to be recorded, was the true date ; and as against her and her heirs, the deed will be taken to be of the same effect as if it had been executed and delivered at the time of its date, when she was unmarried and had capacity to execute it; or in other words, the tenant is, upon these facts, estopped from setting up any title in Mrs. Heffrein at the time Hooton conveyed to the demandant. This we understand to be the view of the case taken by the learned judge, though perhaps in a critical examination of the language used by him, the silence of the grantor as to the defect of Hooton's title will not be found to be included as an element in the instruction given to the jury.

This raises the material question at issue between the parties, whether a married woman and her heirs may be barred of her estate by an estoppel *in pais.*

She can make no valid contract in relation to her estate. Her separate deed of it is absolutely void; any covenants in such separate deed would be likewise void. If she were to covenant that she was sole, was seized in her own right, and had full power to convey, such covenants would avail the grantee nothing. She could neither be sued upon them, nor estopped by them. The law has rendered her incapable of such contract, and she finds in her incapacity her protection ; her safety in her weakness. Her most solemn acts, done in good faith, and for full consideration, cannot affect her interest in the estate, or that of the husband and children. The strongest possible example of this was presented in the case of the *Concord Bank* v. *Bellis*, above cited, in which it was held that where an estate was conveyed to a married woman, and she at the same time gave back a deed of mortgage to secure a part

of the purchase money, such deed of mortgage was wholly void. And we think a married woman cannot do indirectly what she cannot do directly ; cannot do by acts *in pais* what she cannot do by deed; cannot do wrongfully what she cannot do rightfully. She cannot by her own act enlarge her legal capacity to convey an estate.

This doctrine of estoppel *in pais* would seem to be stated broadly enough, when it is said that such estoppel is as effectual as the deed of the party. To say that one may, by acts in the country, by admission, by concealment or by silence, in effect do what could not be done by deed, would be practically to dispense with all the limitations the law has imposed upon the capacity of infants or married women to alienate their estates.

But if Mrs. Heffrein were personally estopped to say this deed was executed by her while under coverture, we are not prepared to say that the daughter would be so estopped. The condition of the estate was this : The fee was in Mrs. Heffrein, with limited power of alienation ; with no power indeed to convey, except by the joint deed of herself and husband ; Rev. Sts. *c.* 59, § 2 ; and with no power to devise it. The law had given her no power by any act of hers to change the destination of the estate, or impair the title which at her decease would vest in her child. Upon her decease, the daughter enters into possession of the estate. She is rightfully there ; the estate is in her, unless there has been an alienation of the estate in the mode prescribed by law, in the lifetime of the mother. If it be said that the mother was guilty of misrepresentation and concealment, for which coverture affords no protection ; the answer might well be, that whatever might be the effect upon her personally, even if it estopped her to claim any interest in the estate, it could not do what the statute has not done, give her a power so to alienate the estate as to prevent the entry of her heirs at law upon her decease.

Such seems to us the result of the application of well settled principles of law to the case at bar. And upon a somewhat diligent examination of the authorities, we have found none to

lead us to a different conclusion.  The diligence of the counsel for the demandant has cited but two cases, having much tendency even to sustain the position that the estate of a married woman, incapable of making a deed, may pass by estoppel *in pais*.  These are *Hunsden* v. *Cheyney*, 2 Vern. 150, and *Savage* v. *Foster*, 9 Mod. 35.

In both these cases the husband and wife, who jointly were capable of levying a fine, were parties to the original frauds. They were both suits in equity against the parties to the fraud. They both rely, as matter of authority, upon the case of the estoppels of infants, who are not incapable of conveying, but whose deeds are voidable only and not void ; and neither of the cases is, we think, entitled to the highest consideration.  If they established the point, for which they are cited, that the estate of a married woman may pass by her acts *in pais*, not only without the concurrence of the husband, but in fraud of his rights, we should question their application under our system, where the statute of frauds is equally binding in courts of equity as of law ; where the powers of married women, in the conveyance or devise of lands, are defined and limited by express statute ; and where the titles to real estate are matters of public record.

No case at law has been cited, nor have we found one, in which it has been held that the estate of a party has been barred by estoppel *in pais*, who was incapable of conveying by deed.  And though courts of law have liberally applied the doctrine of estoppel *in pais* to cases of personal property, in the transfer of which no technical formalities intervene to prevent its application, we know of no case in which it has been applied to a party incapable in law of making a contract.

The result of the views we have felt compelled to take of the case is, that the deed of Mrs. Heffrein to the demandant's grantor was absolutely void, and that this tenant is not estopped to deny its validity.                *New trial in this court.*